Plaintiff moves the court to clarify its holding in Overlook Nursing Home, Inc. v. United States, 214 Ct. Cl. 60, 556 F.2d 500 (1977) respecting start-up costs. Defendant, responding, says our opinion was free from ambiguity, but imputes to it a meaning we did not intend.
We stated at p. 70 of our opinion that plaintiff constructed and operated an entire physical plant as a unit, but by regulation of the Commonwealth of Massachusetts it was certified to provide medical services to no more than 20 beds at the start. Later this was by the state’s permission enlarged to 30 beds and finally to the full capacity of 90. While operating at the initial 20 and later 30 rates, the costs per bed were naturally much enhanced since only in size of staff could a saving be effected over operation at full capacity. Defendant was and is resolved to deny plaintiff reimbursement for this extra cost except so far as it may have been reimbursed already under the rubric of "low occupancy” as stated on p. 71. We stated at 70-71 that we thought the controversy could be resolved by reference to § 2132.1 of the Providers’ Reimbursement Manual, quoting a passage therefrom.
The first sentence of the quote reads:
In the first stages of operation, a new institution incurs certain costs in developing its ability to care for patients prior to the admission of such patients.
*564 Defendant argues that this restricts the entire section to costs incurred before the facility was opened to any patients.
We now spell out, that as we read § 2132.1, while the operation was limited to 20 beds plaintiff incurred the disputed extra costs by way of "developing its ability” to care for patients who would be admitted to beds 21-90 when they were legally usable. When plaintiff was allowed to operate at the 30-bed rate, the disputed extra costs were incurred in developing plaintiffs ability to care for patients who would be admitted to beds 31-90 when they were legally usable. If any number of beds other than 20, 30, and 90, emerge in future proceedings, possibly the parties and the trial judge will be able to figure out how to apply our interpretation. We note also the definition in § 2132.2:
Definition: For program purposes, "start-up costs” are those costs incurred in the operation and maintenance of an institution from the time the institution is created until the time when the first patient, whether Medicare or non-Medicare, is admitted for treatment.
We construe the first patients admitted to beds 21-30 to be "first patients” within the meaning of that definition and the first patients admitted to beds 31-90 to be also "first patients” within the meaning of that definition. This interpretation avoids a distinction that would be so unreasonable as to be contrary to the statute, for obviously, start-up costs continue until the full facility is open for operation. Moreover, it would conflict with § 2132.1 which clearly applies to expenditures incurred in the 20 and 30 bed periods, which are in preparation for patients who will come in only after the constraints are lifted. If persuaded that our interpretation of § 2132.2 was erroneous, that would not end the matter since inquiry would have to follow as to whether § 2132.2 conformed to the statute and whether it denied equal protection as between plaintiff and new Medicare facilities outside of Massachusetts and not subject to the Massachusetts tapered opening restrictions. As we stated at p. 71, some provision for these kinds of costs became implicit, even absent § 2131.1, by "the disallowance of these costs as operating expenses.” In the health care industry, the 20 and 30 bed operations may be taken as equivalent to "pilot runs” in manufacturing. The *565 situation of a fully opened facility having unused beds is entirely different and in no way comparable.
Defendant also continues to fear this court will make a "double reimbursement,” despite what we said at p. 72:
* * * The Government should then show what portion of this amount [unreimbursed start-up costs] has been paid already. * * * the trial judge * * * should not permit plaintiff to recover twice for the same costs, * * *.
The claimed start-up costs may in whole or part have been paid already under the same or another rubric. If defendant so demonstrates, it is entitled to credit for payment it shows to have been so made. If, e.g., the increase in reimbursable per diem cost for "low occupancy” by 20 percent for 1968 and 5 percent for 1969 was intended in good faith to provide for all allocable start-up costs incurred after the first opening, clearly defendant need pay no more. It is reasonable to suppose the intermediary would have realized the unfairness of refusing all reimbursement for these start-up costs and would have looked for some handle for allowance to the extent properly allocable to Medicare. We were and are far from holding that plaintiff is entitled to recover anything. We were perplexed by the record before us and wanted enlightenment, which we hope the parties will now join in providing.
The case is returned to the trial division for further proceedings consistent with this order.